Battle, J.
 

 The right of the plaintiff to recover in the present action is resisted on two grounds: The first is, that the defendant was not guilty of negligence in permitting the slave in question to visit his sick master; and the second is, that the obligation, not to permit the slave to leave the State, was contained in the covenant, and that the action ought to have been brought for a breach of that, and of course, ought to have been an action of covenant.
 

 We are of opinion that the first ground of objection is a valid one, and that being fatal to the action, it is unnecessary to consider the second.
 

 The hirer of a slave is bound to take ordinary care of him; that is, the same care which, under the same circumstances, a person of ordinary prudence would take of the slave if he were the owner ;
 
 Heathcock
 
 v.
 
 Pennington,
 
 11 Ire. Rep. 640 ;
 
 Couch
 
 v.
 
 Jones,
 
 4 Jones’ Rep. 402. This is the rule by which the hirer is to be governed in keeping the slave from being injured or destroyed, and in the application of it, the slave is to be considered an intelligent being, with a strong instinct of self-preservation, and capable of using the proper means for keeping out of, or escaping from, situations of danger;
 
 Heathcock
 
 v.
 
 Pennington, ubi supra; Merring
 
 v.
 
 Wilmington and Ral. R. R. Co.,
 
 10 Ire. Rep. 402;
 
 Swigent
 
 v.
 
 Graham,
 
 7 B. Mon. (Ken.) Rep. 661. No reason can be given why the same rule should not apply to the care which a hirer must take to prevent a slave from running away; and we are sure that the fact is, and therefore the presumption must be, that in the large majority of instances, under ordinary circum
 
 *3
 
 stances, the slave, an intelligent being, will prefer to remain with his master or hirer, rather than flee from him to another country. Now, if a master were to take his slave seventy-five or a hundred miles from his wife, would he hesitate to permit him to visit her at suitable times ? "Would he, under ordinary circumstances, think he was running any risk in sending his slave that distance upon any business that required it? "We believe that instances of such conduct are not of very uncommon occurrence in this State, and that there is not one case in 'a hundred in which the slave avails himself of the opportunity of escaping into another State. If, then, an owner of ordinary prudence would feel no hesitation in sending his slave, or permitting him to go, seventy or eighty miles from home, we cannot think the hirer in the present case, where there was no special ground of suspicion, ought to be charged with a want of ordinary care in permitting the slave in question to visit his sick master, even though, in doing so, he had to cross Albemarle sound. It will not do to say that under ordinary circumstances, one who hires a slave near the border of the State, must guard him by day and imprison him or chain him afnight, to prevent him from fleeing across the line.
 

 Believing that the action cannot be sustained, we must direct the judgment of nonsuit to be aifirmed.
 

 Per Curiam, Judgment aifirmed.